UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 04 441

R. BROOK STOUTENBURGH and
PATRICIA STOUTENBURGH,

Plaintiffs,

-against-

GRAND BANKS YACHTS, LTD. and
EAST COAST YACHT SALES, INC.,

Defendants.

**VERIFIED COMPLAINT**

Civil Action No.
Trial By Jury Demanded

Plaintiffs, R. Brook Stoutenburgh and Patricia Stoutenburgh (hereinafter referred to collectively as "Plaintiffs"), by and through their attorneys, DeGraff, Foy, Kunz & Devine, LLP, complaining of the defendants East Coast Yacht Sales, Inc. (hereinafter referred to as defendant "ECYS") and Grand Banks Yachts, Ltd. (hereinafter referred to as defendant "Great Banks") allege upon information and belief as follows:

**THE PARTIES**

1. Plaintiff R. Brook Stoutenburgh is a resident of Jamestown, County of Newport, State of Rhode Island.

2. Plaintiff Patricia Stoutenburgh is a resident of Jamestown, County of Newport, State of Rhode Island.

3. Upon information and belief, the defendant ECYS is a corporation duly organized under the laws of the State of Maine, having its principal place of business in Yarmouth, Maine.

4. At all times relevant hereto, the defendant ECYS was and still is a merchant engaged in the business of dealing in, selling, marketing, and distributing sailboats and yachts, including but not limited to the Eastbay 49, Hull # 41.

5. Upon information and belief, the defendant Grand Banks is a corporation duly organized under the laws of the State of Connecticut, having its principal place of business in Singapore, Republic of Singapore.

6. At all times relevant hereto, the defendant Grand Banks was and still is a merchant engaged in the business of designing, constructing, manufacturing, advertising, selling, transporting, marketing, promoting, and distributing yachts, including but not limited to the Eastbay 49, Hull # 41.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this civil action in that the parties are citizens of different states and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction of this matter in that one or more claims arise under the laws of the United States, specifically 15 U.S.C. § 2301.

9. This Court has supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this district in that the events giving rise to the claims described herein occurred in this district.

## BACKGROUND

11. In or about October 2001, Plaintiffs contracted to purchase an Eastbay 49, Hull # 41 yacht (hereinafter referred to as the "yacht") from the Newport, Rhode Island branch of

defendant ECYS for approximately Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

12. Plaintiffs purchased the yacht pursuant to a purchase agreement dated October 9, 2001. A true and correct copy of said purchase agreement is annexed hereto and made a part hereof as Exhibit "A".

13. The said yacht was designed -- and manufactured by defendant Grand Banks in Singapore under the [illegible] of the purchase agreement.

14. The bill of sale dated October 10, 2001, indicates Grand Banks delivered the yacht to defendant ECYS, at its branch in Yarmouth, Maine on that date.

15. Plaintiffs insured the yacht through Hinckley Marine Insurance, located in Southwest Harbor, Maine, a subsidiary of Atlantic Mutual Insurance Company, insuring against risks associated with property damage, commercial towing, emergency service, liability, and personal property.

16. Defendant Grand Banks provided the Plaintiffs with a limited five-year hull warranty for osmotic blistering and a limited one-year parts warranty, obligating it to "repair or replace . . . any part or parts . . . within twelve (12) months from the first retail Owners Registration." Annexed hereto and made a part hereof as Exhibit "B" is a true and correct copy of defendant Grand Banks' Limited Warranty disclosure.

17. Defendant Grand Banks is also subject to the obligations of the implied warranty of merchantability for the hull or parts for a period of twelve (12) months.

18. While operating the yacht for the first time in October 2001, transporting it from Jamestown, Rhode Island to Maine for winterization and storage at defendant ECYS, Plaintiffs felt a vibration on the port side of the yacht.

19. Plaintiffs immediately brought the vibration problem to the attention of Michael Iconnetta, an employee, representative and/or agent of defendant ECYS, who acknowledged existence of the vibration and suggested balancing the props as a remedy.

20. During the winter of 2001-2002, Plaintiffs incurred a One Thousand, Six Hundred Seventy Nine and 68/100 ($1,679.68) Dollar expense from Black Dog Propellers for balancing the props.

21. Upon information and belief, during the winter of 2001-2002, Mr. Iconnetta and/or defendant ECYS advised defendant Grand Banks of the vibration problem existing in the yacht.

22. On or about June 2002, after the yacht had been winterized and stored in Maine during the winter months, Plaintiffs transported the yacht to Jamestown, Rhode Island to defendant ECYS's boat yard, New England Boat Works, an authorized service provider for defendant Grand Banks.

23. New England Boat Works completed the electronic equipment installation and attempted to repaint various items pursuant to the purchase agreement.

24. Defendant Grand Banks paid for these services.

25. Between August and September 2002, the yacht was moved to Plaintiffs' marina in Jamestown, Rhode Island, to have the work which New England Boat Works failed to complete, finished in accordance with the purchase agreement.

26. The electronic equipment installation, repairs, and painting took approximately four months to complete, during which time the Plaintiffs were deprived of the use of the yacht.

27. On or about October 3, 2002. Plaintiffs finally received and accepted delivery of the yacht.

28. On or about October 3, 2002, Plaintiffs undertook to navigate the yacht to Florida, at which time they were immediately aware of a vibration coming from the port side of the yacht so severe that they were unable to operate the engines above 1900 rpms.

29. Because the severe vibration rendered the yacht unfit and unsafe for operation, the yacht was hauled to the Palmer/Johnson Boat Yard, an authorized service provider of defendant Grand Banks in Savannah, Georgia, where the new props, shafts, shaft mounts, and both transmissions were replaced.

30. Defendant Grand Banks paid the costs of these repairs.

31. During a sea trial by Palmer/Johnson's project manager and mechanic, following said repairs, the port engine exploded causing oil and debris to spill throughout the engine room.

32. As a result of the engine explosion, Plaintiffs were suffered to incur a Twenty One Thousand Two Hundred and 00/100 ($21,200.00) Dollar expense to replace both of the Caterpillar 3196 engines that were in the yacht at the time with two new Caterpillar C12 engines, the cost of one of the engine being covered by Caterpillar.

33. During the engine repairs, Palmer/Johnson became insolvent and the yacht had to be transported to the Hinckley Marina, another authorized service provider of defendant Grand Banks for further repair.

34. Hinckley's facility was not large enough and did not have the capability to complete the repairs, and in Fall 2003, the yacht was therefore transported to the Spencer Rybovich Marina, an authorized service provider of defendant Grand Banks, in West Palm Beach, Florida.

35. On or about December 2003, after the work was completed, Plaintiffs tested the yacht but the vibration was still present.

36. Defendant Grand Banks and defendant ECYS were notified of the vibration problem of the yacht.

37. On or about March 2004, Robert Livingston, defendant Grand Banks' Chairman and CEO promised to Plaintiffs that defendant Grand Banks would "not leave (the Plaintiffs) with the vibration problem and will continue to work with (the Plaintiffs)."

38. Mr. Livingston said that as an initial step, Grand Banks would replace the engine mounts, and if that did not correct the vibration, then they would install intermediate struts.

39. Plaintiffs have not received any further correspondence from defendants Grand Banks or defendant ECYS since March 2004, and no repairs required to make the yacht useable and safe have been made by the defendants.

40. Numerous unsuccessful attempts have been made to repair the yacht.

41. The Plaintiffs have been substantially denied the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT AGAINST DEFENDANT ECYS)**

42. The Plaintiffs repeat and reallege Paragraphs 1 through 41 of this Complaint as through fully set forth herein.

43. On or about October 2001, Plaintiffs and defendant ECYS entered into a written purchase agreement in which Plaintiffs agreed to purchase the yacht from defendant ECYS, made and manufactured by defendant Grand Banks for good and valuable consideration of approximately Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars, and

defendant ECYS agreed to deliver a yacht meeting the specifications delineated in the purchase agreement.

44. Pursuant to the purchase agreement, on or about October 10, 2001, defendant ECYS delivered the yacht to the Plaintiffs for the purpose of transporting it to the ECYS yacht yard in Maine.

45. Upon information and belief, defendant ECYS failed and neglected to perform the conditions of the purchase agreement thereby breaching the same, in that they delivered a yacht that failed to comply with the specifications of the said purchase agreement and was not suitable, useable or safe for operation and use by the Plaintiffs.

46. Numerous unsuccessful attempts have been made to repair the yacht.

47. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

48. By reason of the foregoing, Plaintiffs have been damaged in the amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT AGAINST DEFENDANT GRAND BANKS)**

49. The Plaintiffs repeat and reallege Paragraphs 1 through 48 of this Complaint as through fully set forth herein.

50. On or about September 2001, Plaintiff and defendant ECYS entered into a written purchase agreement for valuable consideration, in which Plaintiffs agreed to purchase the yacht from defendant ECYS, and defendant Grand Banks agreed to design, construct, manufacture, sell

and transport the yacht for approximately Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

51. Defendant ECYS agreed to sell and deliver, and defendant Grand Banks agreed to design, construct, manufacture, sell, transport, and deliver the yacht meeting the specifications delineated in the purchase agreement.

52. On or before October 10, 2001, defendant Grand Banks completed designing, constructing, manufacturing, the yacht and transported, delivered and sold it to defendant ECYS, who in turn sold and delivered the same to the Plaintiffs.

53. Upon information and belief, defendant Grand Banks failed to perform the conditions of the purchase agreement, thereby breaching the same, in that the design, construction, and manufacturing of the yacht failed to comply with the specifications of the said purchase agreement and was not suitable, useable or safe for operation and use by the Plaintiffs.

54. Numerous unsuccessful attempts have been made to repair the yacht.

55. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

56. By reason of the foregoing, Plaintiffs have been damaged in the amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

<u>AS AND FOR A THIRD CLAIM FOR RELIEF</u>
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT ECYS)**

57. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 56 of the Complaint with the same force and effect as if fully set forth herein at length.

58. Plaintiffs purchased the yacht from defendant ECYS, a merchant engaged in the business of dealing, selling, marketing, and distributing sailboats and yachts, including but not limited to the Eastbay 49, Hull # 41, the yacht in controversy in this action.

59. Defendant ECYS implied and warranted that the yacht was of merchantable quality, contained no latent defects, and would perform the function for which it was designed and sold, and thereby induced Plaintiffs to purchase the yacht.

60. Defendant ECYS was advised and knew that Plaintiffs purchased the yacht for the purpose of cruising the eastern seaboard of the United States.

61. In purchasing the yacht, Plaintiffs relied upon the skill, judgment, and experience of the defendant ECYS.

62. The yacht was not of the character or quality warranted by the defendant ECYS and was not merchantable at the time of sale, but was grossly and irreparably defective.

63. The yacht was not merchantable nor fit for the use for which is was designed and sold, and would not operate and function properly for the purposes intended by the Plaintiffs because of various defects and imperfections including the yacht's hull, engines, design, engine support(s), and other unknown causes resulting in extensive vibration problem.

64. Upon becoming aware of the defects and imperfections of the yacht, its unsuitability for the task for which it was sold, and its general unmerchantability, Plaintiffs notified the defendants of the yacht's defects.

65. Defendant ECYS has been unable to cure said defects and repair the problems with the yacht.

66. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

67. As a result, Plaintiffs incurred expenses due to hauling, storage, repair and maintenance fees, insurance premiums, and insurance deductibles totaling not less than One Hundred Twenty Five Thousand and 00/100 ($125,000.00) Dollars.

68. At the time and place of acceptance the true value of the yacht given its condition at the time of delivery was significantly less than the purchase price of Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

69. By reason of the foregoing, Plaintiffs have incurred numerous costs and damages, in amongst other things, their attempt to repair the yacht in the amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT GRAND BANKS)**

70. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 69 of the Complaint with the same force and effect as if fully set forth herein at length.

71. The yacht Plaintiffs purchased from defendant ECYS was designed, constructed, and manufactured by defendant Grand Banks.

72. In addition to the warranties of defendant ECYS that the yacht was of merchantable quality, contained no latent defects, and that it would perform the function for which it was designed and sold, Plaintiffs relied on the defendant Grand Banks "brand name" of the yacht and defendants Grand Banks' extensive advertising extolling the virtues and superior qualities of its products, and was thereby induced to purchase the yacht.

73. Defendant Grand Banks was advised and knew that Plaintiffs purchased the yacht for the purpose of cruising the eastern seaboard of the United States.

74. In purchasing the yacht, Plaintiffs relied upon the skill, judgment and experience of the defendant Grand Banks.

75. The yacht was not merchantable and of the character or quality warranted and represented by the defendant Grand Banks but was grossly and irreparably defective.

76. The yacht would not operate and function properly because of various defects and imperfections including the yacht's hull, engines, design, engine support(s), and other unknown causes creating an extensive vibration problem, which resulted in Plaintiffs incurring financial burden in attempting to repair the yacht's defects and being unable to use the yacht for the purpose for which it was designed and sold. As a result, the yacht was not merchantable at the time of sale.

77. The yacht was not fit for the ordinary purposes for which yachts are used because of the vibration problem.

78. Upon becoming aware of the defects and imperfections of the yacht, its unsuitability for the task for which it was sold and its general unmerchantability, within a reasonable time, Plaintiffs notified the defendant Grand Banks of the yacht's defects.

79. Defendant Grand Banks was unable to cure the said defects and the Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

80. As a result, Plaintiffs incurred expenses due to hauling, storage, repair and maintenance fees, insurance premiums, and insurance deductibles totaling One Hundred Twenty Five Thousand and 00/100 ($125,000.00) Dollars.

81. At the time and place of acceptance the true value of the yacht given its condition at the time of delivery was significantly less than the purchase price of Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

82. By reason of the foregoing Plaintiffs have incurred [illegible] costs and damages, in amongst other things, their attempt to repair the [illegible] and for the lost use of the yacht, in the amount to be determined by the [illegible], but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**<u>AS AND FOR A FIFTH CLAIM FOR RELIEF</u>**
**(BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT ECYS)**

83. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 82 of the Complaint with the same force and effect as if fully set forth herein at length.

84. Plaintiffs accepted the delivery of the yacht.

85. At the time of acceptance, Plaintiffs were unable to discover the vibration non-conformity upon delivery to the dock because it was not readily apparent until the yacht was operated.

86. Upon inspection of the yacht, Plaintiffs discovered that the yacht failed to conform to the purchase agreement and the expressed written warranty provided therein.

87. On or about October 13, 2001, when Plaintiffs discovered the vibration defect, they immediately notified defendant ECYS of the breach of warranty.

88. Defendant ECYS has breached the yacht's limited warranty in that they have not successfully repaired or replaced the defective parts and/or cured the vibration defect, despite assuring the Plaintiffs that they would do so.

89. The Plaintiffs have been substantially denied the benefit of their bargain with defendants, the use of the yacht, and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

90. As a result, Plaintiffs incurred expenses due to hauling, storage, repair, maintenance fees, insurance premiums, and insurance deductibles totaling One Hundred Twenty Five and 00/100 ($125,000.00) Dollars.

91. At the time and place of acceptance the true value of the yacht given its condition at the time of delivery was significantly less than the purchase price of Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

92. Plaintiffs revoked their acceptance on July 23, 2004 and notified defendant ECYS of their revocation. Attached hereto and made a part hereof as Exhibit "C" is a true and correct copy of said letter of revocation or acceptance.

93. As a result of defendant ECYS's breach of warranty, Plaintiffs have been damaged in an amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**(BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT GRAND BANKS)**

94. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 93 of the Complaint with the same force and effect as if fully set forth herein at length.

95. Although Plaintiffs accepted the delivery of the yacht, upon its inspection, Plaintiffs discovered that the yacht failed to conform to the purchase agreement and the expressed written warranty provided therein.

96. Upon information and belief, at the time Plaintiffs accepted the yacht, Plaintiffs were unable to discover the vibration non-conformity upon delivery to the dock because it was not readily apparent unless and until the yacht was operated.

97. On or about October 13, 2001, when Plaintiffs discovered the vibration defect, they immediately notified defendant Grand Banks of the breach of expressed written warranty.

98. Defendant Grand Banks has breached the yacht's expressed written warranty in that they have not successfully repaired or replaced the defective parts and/or cured the vibration defect, despite assuring the Plaintiffs that they would do so.

99. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

100. As a result, Plaintiffs incurred expenses due to hauling, storage, repair, maintenance fees, insurance premiums, and insurance deductibles totaling One Hundred Twenty Five and 00/100 ($125,000.00) Dollars.

101. At the time and place of acceptance the true value of the yacht given its condition at the time of delivery was significantly less than the purchase price of Eight Hundred Seventy Nine and 00/100 ($879,000.00) Dollars.

102. Plaintiffs revoked their acceptance on July 23, 2004 and notified defendant Grand Banks of their revocation.

103. As a result of defendant Grand Banks' breach of warranty, Plaintiffs have been damaged in an amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT ECYS)**

104. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 103 of the Complaint with the same force and effect as if fully set forth herein at length.

105. On or about October 2001, Plaintiffs and defendant ECYS entered into a written purchase agreement in which Plaintiffs agreed to purchase the yacht from defendant ECYS, made and manufactured by defendant Grand Banks for good and valuable consideration of approximately $879,000, and defendant ECYS agreed to deliver a yacht meeting the specifications delineated in the purchase agreement.

106. Upon information and belief, defendant ECYS failed and neglected to perform the conditions of the purchase agreement, thereby breaching the express and implied covenant of good faith and fair dealing, in that they delivered a yacht that failed to comply with the specifications of the said purchase agreement because the yacht was not built as it was originally designed.

107. By reason of the foregoing, Plaintiffs have been damaged in the amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR AN EIGHTH CLAIM FOR RELIEF**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT GRAND BANKS)**

108. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 107 of the Complaint with the same force and effect as if fully set forth herein at length.

109. On or about October 2001, Plaintiff and defendant ECYS entered into a written purchase agreement for valuable consideration, in which Plaintiffs agreed to purchase a yacht from defendant ECYS, and defendant Grand Banks agreed to design, construct, manufacture, sell and transport said yacht for approximately Eight Hundred Seventy Nine Thousand and 00/100 ($879,000.00) Dollars.

110. Defendant ECYS agreed to sell and deliver, and defendant Grand Banks agreed to design, construct, manufacture, sell, transport, and deliver a yacht meeting the specifications delineated in the purchase agreement.

111. On or before October 10, 2001, defendant Grand Banks designed, constructed, manufactured, transported, delivered, and sold the yacht to defendant ECYS, who in turn sold and delivered the same to the Plaintiffs.

112. Upon information and belief, defendant Grand Banks failed to perform the conditions of the purchase agreement, thereby breaching the express and implied covenant of good faith and fair dealing, in that the design, construction, and manufacturing of the yacht failed to comply with the specifications of the purchase agreement.

113. Numerous unsuccessful attempts have been made to repair the yacht.

114. The Plaintiffs have been substantially denied the benefit of their bargain with the defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

115. By reason of the foregoing, Plaintiffs have been damaged in the amount to be determined by the Court, but not less than One Million and 00/100 ($1,000,000.00) Dollars.

**AS AND FOR A NINTH CLAIM FOR RELIEF**
**(NEGLIGENT DESIGN AND CONSTRUCTION**
**AGAINST DEFENDANT ECYS)**

116. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 115 of the Complaint with the same force and effect as if fully set forth herein at length.

117. The yacht sold by defendant ECYS to the Plaintiffs was designed and constructed in a negligent manner.

118. Defendant ECYS knew or should have known that among other things, the hull, engine, mounts, struts, and shafts were improperly and negligently designed and constructed resulting in the severe vibration of the yacht when it was being operated.

119. The negligent design and construction of the yacht and its nonconformity substantially impaired the value of the yacht and caused financial damages to the Plaintiffs, and substantially denied Plaintiffs the use of the yacht all to their damage and detriment.

120. As the result of defendant ECYS's negligence, Plaintiffs have been damaged in an amount to be determined by the Court, but not less than Two Million and 00/100 ($2,000,000.00) Dollars.

**AS AND FOR A TENTH CLAIM FOR RELIEF**
**(NEGLIGENT DESIGN AND CONSTRUCTION**
**AGAINST DEFENDANT GRAND BANKS)**

121. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 120 of the Complaint with the same force and effect as if fully set forth herein at length.

122. The yacht designed, constructed, manufactured, and sold by defendant Grand Banks to the Plaintiffs was designed and constructed in a negligent manner.

123. Defendant Grand Banks knew or should have known that among other things, the hull, engine, mounts, struts, and shafts were improperly and negligently designed and constructed resulting in the severe vibration of the yacht when it was being operated.

124. The negligent design and construction of the yacht and its nonconformity substantially impaired the value of the yacht and caused financial damages to the Plaintiffs and denied Plaintiffs the use of the yacht all to their damage and detriment.

125. As the result of defendant Grand Bank's negligence, Plaintiffs have been damaged in an amount to be determined by the Court, but not less than Two Million and 00/100 ($2,000,000.00) Dollars.

**AS AND FOR AN ELEVENTH CLAIM FOR RELIEF**
**(CLAIM PURSUANT TO MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, AGAINST DEFENDANT ECYS)**

126. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 125 of the Complaint with the same force and effect as if fully set forth herein at length.

127. On or about October 2001, Plaintiffs purchased the yacht, a consumer product, from defendant ECYS.

128. Upon information and belief, the purchase agreement of the yacht included written and implied warranties.

129. After Plaintiff accepted the delivery of the yacht, it was discovered that the yacht failed to conform to the purchase agreement and the warranties provided therein.

130. Upon information and belief, at the time Plaintiffs accepted the yacht, Plaintiffs were unable to discover the vibration non-conformity upon delivery to the dock because it was not readily apparent unless and until the yacht was operated.

131. On or about October 13, 2001, when Plaintiffs discovered the vibration defect, they immediately notified defendant ECYS of the breach of express and implied warranties.

132. Defendant ECYS was provided with multiple opportunities to cure its breach, but they have not successfully repaired or replaced the defective parts and/or cured the vibration defect.

133. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

134. As a result of defendant ECYS's failure to cure, Plaintiffs incurred expenses due to hauling, storage, repair, maintenance fees, insurance premiums, and insurance deductibles totaling not less than One Hundred Twenty Five Thousand and 00/100 ($125,000.00) Dollars.

135. Pursuant to 15 U.S.C. §2301 Plaintiffs are entitled to recover reasonable attorney's fees as damages from the defendant ECYS in the amount to be determined by the Court, together with interest, costs and such other relief as the Court deems just and proper.

**AS AND FOR A TWELFTH CLAIM FOR RELIEF**
**(CLAIM PURSUANT TO MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, AGAINST DEFENDANT GRAND BANKS)**

136. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 135 of the Complaint with the same force and effect as if fully set forth herein at length.

137. On or about October 2001, Plaintiffs purchased the yacht, a consumer product, designed, manufactured, and sold by defendant Grand Banks to defendant ECYS, who in turn sold it to the Plaintiffs.

138. Upon information and belief, the purchase of the yacht included written and implied warranties.

139. After Plaintiff accepted the delivery of the yacht, Plaintiffs discovered that the yacht failed to conform to the written and implied warranties.

140. Upon information and belief, at the time Plaintiffs accepted the yacht, Plaintiffs were unable to discover the vibration non-conformity upon delivery to the dock because it was not readily apparent unless and until the yacht was operated.

141. On or about October 13, 2001, when Plaintiffs discovered the vibration defect, they immediately notified defendant Grand Banks of the breach of written and/or implied warranties.

142. [illegible] Banks was provided with multiple opportunities to cure its [illegible] have not successfully [illegible] the defective parts [illegible] the vibration defect, despite promising the Plaintiffs to do so.

143. The Plaintiffs have been substantially denied the benefit of their bargain with defendants and the use of the yacht and have only used it for about 65 hours in the few months that it was operable over the course of almost three years.

144. As a result of defendant Grand Banks' failure to cure, Plaintiffs incurred expenses due to hauling, storage, repair, maintenance fees, insurance premiums, and insurance deductibles totaling not less than One Hundred Twenty Five Thousand and 00/100 ($125,000.00) Dollars.

145. Pursuant to 15 U.S.C. §2301 Plaintiffs are entitled to recover reasonable attorney's fees as damages from the defendant Grand Banks in the amount to be determined by the Court, together with interest, costs and such other relief as the Court deems just and proper.

**WHEREFORE,** Plaintiffs, R. Brook Stoutenburgh and Patricia Stoutenburgh, demand judgment against Defendants East Coast Yacht Sales, Inc. and Grand Banks Yachts, Ltd.:

a) On the First and Second Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than One Million and 00/100 ($1,000,000.00) Dollars;

b) On the Third and Fourth Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than One Million and 00/100 ($1,000,000.00) Dollars;

c) On the Fifth and Sixth Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than One Million and 00/100 ($1,000,000.00) Dollars;

d) On the Seventh and Eighth Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than One Million and 00/100 ($1,000,000.00) Dollars;

e) On the Ninth and Tenth Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than Two Million and 00/100 ($2,000,000.00) Dollars;

f) On the Eleventh and Twelfth Claims for Relief against defendant ECYS and defendant Grand Banks in the amount to be determined by the Court, but in no event less than One Hundred Twenty Five Thousand and 00/100 ($125,000.00) Dollars;

g) Awarding Plaintiffs pre-judgment and post-judgment interest upon all sums awarded to them in this action;

h) Awarding Plaintiffs reasonable attorneys' fees and costs of suit;

i) Awarding Plaintiffs such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable by jury under Rule 38 of the Federal Rules of Civil Procedure and 42 U.S.C. § 1981a.

Dated: Cranston, Rhode Island
September 30, 2004

By: ______________________
Attorneys for Plaintiffs